FILED

03/24/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0331

DA 25-0331

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 60

ROARING LION RANCH, LLC, SAWTOOTH
RANCH, LLC, RICHARD R. KNIGHT,
and SHELLEY KNIGHT,

        Plaintiffs and Appellants,

   v.

YC PROPERTIES,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                  In and For the County of Ravalli, Cause No. DV-24-304
                  Honorable Howard F. Recht, Presiding Judge

COUNSEL OF RECORD:

        For Appellant Roaring Lion Ranch:

                Nicholas J. Lofing, Garlington, Lohn & Robinson, PLLP, Missoula,
                Montana

        For Appellants Richard R. Knight and Shelley Knight, and Sawtooth Ranch,
        LLC:

                Kyle J. Workman, Workman Law, PLLC, Hamilton, Montana

        For Appellee:

                Richard C. Tappan, Connlan W. Whyte, Tappan Law Firm, PLLC,
                Helena, Montana

                            Submitted on Briefs:  December 17, 2025

                                    Decided:  March 24, 2026

Filed:

                    _____
                              Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Roaring Lion Ranch, LLC, Sawtooth Ranch, LLC, and Richard and Shelley Knight (collectively "Plaintiffs") sued YC Properties for abuse of process and malicious prosecution arising from its conduct in a prior water rights dispute. YC Properties moved to dismiss the suit. The Twenty-First Judicial District Court *sua sponte* converted YC's motion to dismiss to a motion for summary judgment, ruled in YC's favor, and dismissed the Plaintiffs' claims with prejudice. The dispositive issue on appeal is whether the District Court erred when it converted YC's motion to dismiss into a motion for summary judgment. We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 YC Properties purchased a ranch near Hamilton, Montana, in 2020. The seller conveyed multiple water rights to YC, including co-ownership of 76H 147802-00—the most senior water right on Sawtooth Creek. 76H 147802-00 permitted YC and its other owners to divert water from the Downing-Vining Ditch at a maximum flow rate of 4 cubic feet per second (cfs). Roaring Lion Ranch, Sawtooth Ranch, and Richard and Shelley Knight own junior, upstream water rights on Sawtooth Creek. Sawtooth Ranch draws water from the Morgan Ditch on the north side of Sawtooth Creek, Roaring Lion Ranch draws water from the south side of the creek, and the Knights draw water from the Jacobsen Ditch.

¶3 YC properties petitioned the District Court to appoint Ryan Vining as Sawtooth Creek's water commissioner in July 2023. Shortly thereafter, Lee Yelin, YC's water rights

consultant, notified Vining that YC was not receiving the entirety of its flowrate and that Vining likely would need to shut off upstream junior appropriators. YC claimed that Vining attempted to close Plaintiffs' headgates without success on two occasions and that YC continued to receive less than 4 cfs of water. YC also alleged that Plaintiffs' headgates lacked measuring devices required by § 85-5-302, MCA.

¶4 In August 2023, YC sued the Plaintiffs in the Twenty-First Judicial District Court, seeking an ex-parte temporary restraining order (TRO) and preliminary and permanent injunctions prohibiting Plaintiffs from diverting water from Sawtooth Creek until YC's senior right was satisfied (the "underlying action"). YC also filed a claim for contempt of court, arguing that Plaintiffs' refusal to shut their headgates and equip them with proper measuring devices interfered with Vining's duties as the water commissioner. YC did not serve or otherwise notify Plaintiffs, claiming that it could not locate their contact information.

¶5 The District Court granted YC's application for a TRO, which remained in place for ten days. After the TRO expired, the District Court heard YC's request to convert the TRO to a preliminary injunction. The Plaintiffs did not appear, and YC informed the court that although it had mailed its complaint to Plaintiffs, it had not personally served them with the pleadings or TRO. The court continued the hearing and ordered that the TRO remain in place for two weeks so YC could complete service.

¶6 Plaintiffs appeared for a status hearing in September 2023 and requested that the court dissolve the TRO. The court dissolved the TRO, remarked that commissioner

3

Vining's authority remained in full force, and instructed Plaintiffs to respond to YC's complaint. Roaring Lion filed a motion to dismiss. The court did not initially rule on Roaring Lion's motion and instead ordered the parties to brief whether the end of the 2023 irrigation season mooted YC's claims.

¶7 In April 2024, the District Court issued an order determining that (1) YC's claims were moot because the 2023 irrigation season was over; (2) YC lacked standing to bring a contempt claim on behalf of commissioner Vining; and (3) although YC alleged that it was entitled to damages because it experienced crop loss as a result of the water shortage, it failed to plead facts supporting this claim. The court therefore dismissed all of YC's claims in the underlying action.

¶8 In August 2024, Plaintiffs initiated the present suit, alleging abuse of process and malicious prosecution against YC. YC moved to dismiss the complaint. In its supporting brief, YC cited facts and documents from the underlying action and attached two exhibits. YC also set forth and analyzed the legal standard for summary judgment, claiming that it was entitled to judgment as a matter of law.

¶9 The court informed the parties that it was converting YC's motion to dismiss into a motion for summary judgment under M. R. Civ. P. 12(d) and directed the parties to prepare additional briefing to address any remaining factual issues. In April 2025, the court issued its opinion and order granting YC's motion for summary judgment and dismissing Plaintiffs' complaint with prejudice.

**STANDARD OF REVIEW**

¶10     We review for abuse of discretion a court's decision to convert a motion to dismiss into a motion for summary judgment. *Anderson v. ReConTrust Co., N.A.*, 2017 MT 313, ¶ 7, 390 Mont. 12, 407 P.3d 692. "A district court abuses its discretion if it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *Harrington v. Energy W., Inc.,* 2017 MT 141, ¶ 10, 387 Mont. 497, 396 P.3d 114 (citation omitted). We review de novo a district court's ruling on a M. R. Civ. P. 12(b)(6) motion to dismiss. *Plouffe v. State*, 2003 MT 62, ¶ 8, 314 Mont. 413, 66 P.3d 316. Whether a complaint states a claim for relief is a question of law that we review for correctness. *Farmers Coop. Ass'n v. Amsden*, 2007 MT 287, ¶ 9, 339 Mont. 452, 171 P.3d 684.

**DISCUSSION**

¶11     M. R. Civ. P. 12(b)(6) permits a defendant to file a motion to dismiss in lieu of answering the complaint. A court may grant a Rule 12(b)(6) motion to dismiss if the claim "either fails to state a cognizable legal theory for relief or states an otherwise valid legal claim but fails to state sufficient facts that, if true, would entitle the claimant to relief under that claim." *Anderson*, ¶ 8 (citations omitted). When determining whether dismissal is appropriate, courts may examine only the complaint's contents. *Plouffe*, ¶ 13. If a court considers matters outside the pleadings, it must convert the motion to dismiss into a motion for summary judgment. M. R. Civ. P. 12(d).

5

¶12    Plaintiffs argue that the District Court erroneously applied Rule 12(d) to convert YC's motion to dismiss into a motion for summary judgment. Plaintiffs contend that the court did not rely on any extrinsic information when assessing their claims and the court's conversion was therefore inappropriate. Finally, Plaintiffs maintain that their complaint is sufficient to withstand dismissal under the more lenient 12(b)(6) standard and that they are entitled to receive an answer and discovery. YC responds that the court did not err but, even if it did, the court's error was harmless and we should affirm.

**Rule 12(d) Conversion**

¶13    When ruling on a motion to dismiss, a court has discretion to consider matters outside of the pleadings. *Meagher v. Butte-Silver Bow City-Cnty*., 2007 MT 129, ¶ 16, 337 Mont. 339, 160 P.3d 552. But if the court chooses to do so, it must treat the motion as one for summary judgment under M. R. Civ. P. 56, notify the parties, and allow them a reasonable opportunity to present relevant material. *Meagher*, ¶ 16; M. R. Civ. P. 12(d). In other words, conversion is required when "matters outside the pleadings are presented to and not excluded by the court." *Anderson*, ¶ 26 (emphasis omitted; citing M. R. Civ. P. 12(d)). The purpose underlying this requirement "is to notify the parties of the additional evidence considered, allow ample opportunity for the parties to prepare information countering the additional evidence, and avoid surprise." *Farmers Coop. Ass'n*, ¶ 23 (citing *Plouffe*, ¶ 15).

¶14    YC responded to Plaintiffs' complaint by filing a motion to dismiss. YC argued that dismissal of the action was proper because Plaintiffs misrepresented facts from the

6

underlying action and their complaint consequently failed to establish the essential elements of abuse of process and malicious prosecution. YC attached two exhibits to its briefs in support of its motion: Exhibit A, the 2024 priority date index for the Sawtooth Creek distribution area, and Exhibit B, Roaring Lion's acknowledgment and waiver of service in the underlying action. YC did not request conversion, but it cited Rule 12(d), set forth the legal standards for summary judgment, and claimed that it was entitled to judgment as a matter of law. Plaintiffs objected to conversion and responded that their complaint was sufficient to withstand a motion to dismiss.

¶15 In November 2024, the District Court heard oral argument regarding YC's motion to dismiss. Plaintiffs asserted that YC's argument conflated the standards for motions to dismiss with summary judgment: "We're not at summary judgment. We're not willing to agree to convert this into a summary judgment proceeding . . . . [W]e want an answer, and we want to do discovery." YC responded that it "present[ed] this court with some facts outside the record, specifically the DNRC proceedings," in the event that "[the] court wanted to consider those facts and wanted to convert to . . . a summary judgment motion."

¶16 After the hearing, the District Court notified the parties that it was converting YC's motion to dismiss into a motion for summary judgment and ordered additional briefing addressing any remaining factual issues. The court did not, however, clarify what outside information it was going to consider in its summary judgment ruling.

¶17 As discussed, Rule 12(d)'s conversion requirement is triggered when the parties present information outside the pleadings and the court does not exclude it.

M. R. Civ. P. 12(d). We do not presume that the court considered outside information "absent some contrary showing or indication." *Anderson*, ¶ 24 (citations omitted). In its summary judgment order, the court referenced the underlying action, stating, "[I]t is clear that there were disputes regarding the water usage between the Plaintiffs and YC" and that "other DNRC proceedings were occurring as well." The court did not discuss any information outside Plaintiffs' complaint. The court's order mentioned neither of the documents YC submitted with its motion to dismiss.

¶18 We have recognized that, in certain circumstances, courts may consider information from related proceedings without triggering Rule 12(d)'s conversion requirement. *See, e.g., Lozeau v. GEICO Indem. Co.*, 2009 MT 136, 350 Mont. 320, 207 P.3d 316; *Farmers Coop. Ass'n*. For example, in *Farmers Cooperative Association*, the parties filed motions to consolidate and to dismiss in two different, ongoing cases that involved the same parties and derived from the same transaction or occurrence. *Farmers Coop. Ass'n*, ¶ 8. The court considered both motions in tandem when ruling on the defendant's motion to dismiss. *Farmers Coop. Ass'n*, ¶ 21. We determined that the court's consideration of both motions did not trigger Rule 12(d). *Farmers Coop. Ass'n*, ¶ 24. Because the parties and counsel were involved in both actions, they could not claim that they were surprised by the additional information that the court considered. *Farmers Coop. Ass'n*, ¶ 23. We applied this rule in *Lozeau*, where we determined that the district court erroneously disregarded information about prior tribal court proceedings involving the same parties and the same dispute when ruling on a motion to dismiss. *Lozeau*, ¶ 12.

¶19 Like *Farmers Cooperative Association* and *Lozeau*, the present and underlying actions involve the same parties and the same counsel. Plaintiffs' tort claims stem from YC's conduct in the underlying action. The parties are aware of the underlying action's factual and procedural record and cannot reasonably suggest that the inclusion of this information was a surprise. The court gave no indication that it considered or relied on any other outside materials. A complaint for malicious prosecution or abuse of process necessarily requires reference to the underlying legal action giving rise to the allegations. The District Court's references to that action—most of which also were described in the complaint—did not require treatment of YC's motion as one for summary judgment. The only dispute raised by YC's motion was whether the complaint stated a claim for relief. Treating YC's motion as one for summary judgment was both unnecessary and premature, as it denied the Plaintiffs a reasonable opportunity to present relevant material to counter the motion. *See Meagher*, ¶ 16; *Farmers Coop. Ass'n*, ¶ 23. We therefore conclude that the District Court erred by converting YC's motion to dismiss into a motion for summary judgment.

¶20 YC argues that even if the court erroneously applied Rule 12(d), we should nevertheless affirm because the court's error was harmless. *See Tipp v. Skjelset*, 1998 MT 263, ¶ 16, 291 Mont. 288, 967 P.2d 787 ("A harmless error does not mandate that we reverse a district court judgment; an error must cause substantial prejudice to warrant reversal." (citations and quotations omitted)). We rejected this argument in *Meagher*, explaining that "the distinction between dismissal and summary judgment is more than

9

academic. The former allows for the possibility of re-filing a complaint so as to withstand dismissal, while the latter is a final adjudication on the merits." *Meagher*, ¶ 20 (concluding that the district court's conversion of motion to dismiss into motion for summary judgment was not harmless error); *see also Hajenga v. Schwein*, 2007 MT 80, ¶ 11, 336 Mont. 507, 155 P.3d 1241 ("[S]ummary judgment is an extreme remedy that should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."). We accordingly reject YC's argument that the court's error was harmless.

¶21 The District Court abused its discretion by prematurely converting YC's motion to dismiss into a motion for summary judgment. The court granted summary judgment in YC's favor before Plaintiffs received an answer to their complaint or had an opportunity to conduct discovery. The court then dismissed Plaintiffs' claims with prejudice, depriving them of an opportunity to refile. The court's premature conversion of YC's motion was a prejudicial error that warrants reversal.

**Sufficiency of Plaintiffs' Complaint**

¶22 A plaintiff's complaint must contain "a short and plain statement of the claim" and a demand for relief. M. R. Civ. P. 8(a). Rule 8(a) is a notice pleading statute. *Kunst v. Pass*, 1998 MT 71, ¶ 35, 288 Mont. 264, 957 P.2d 1. It aims to provide a defendant notice of the facts that a plaintiff seeks to prove, the necessary elements to their claim, and the relief sought. *Kunst*, ¶ 35. Our liberal approach does not, however, excuse omissions of

10

necessary facts and must give rise to more than a mere suspicion that a plaintiff is entitled to relief. *Jones v. Mont. Univ. Sys.,* 2007 MT 82, ¶ 42, 337 Mont. 1, 155 P.2d 1247.

¶23 A defendant who files a motion to dismiss in response to a complaint effectively admits all well-pleaded allegations. *Plouffe*, ¶ 8. When considering a motion to dismiss, courts must take as true "all well-ple[aded] factual assertions . . . and view them in the light most favorable to the claimant, drawing all reasonable inferences in favor of the claim." *Anderson*, ¶ 8 (citations omitted). Because we do not "favor the short circuiting of litigation at the initial pleading stage," a court may dismiss a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKinnon v. W. Sugar Coop. Corp.*, 2010 MT 24, ¶¶ 12, 17, 355 Mont. 120, 225 P.3d 1221 (citations omitted).

¶24 Plaintiffs presented two claims against YC: abuse of process and malicious prosecution. To succeed on a claim for abuse of process, a plaintiff must prove that the defendant (1) had an ulterior purpose and (2) committed "a willful act in the use of the process not proper in the regular conduct of the proceeding." *Seltzer v. Morton*, 2007 MT 62, ¶ 57, 336 Mont. 225, 154 P.3d 561 (quoting *Brault v. Smith*, 209 Mont. 21, 29, 679 P.2d 236, 240 (1984)). In other words, the plaintiff must prove that the defendant attempted to "use process to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do." *Seltzer*, ¶ 57 (quoting *Brault*, 209 Mont. at 29, 679 P.2d at 240).

11

¶25     Plaintiffs' complaint alleged that YC's ulterior purpose in initiating the underlying action was to force Plaintiffs to incur unnecessary expenses, to force them to acquiesce to the related DNRC proceedings, and to force them into settlement to prevent future litigation over YC's water rights.  In support of this claim, Plaintiffs alleged that YC withdrew its DNRC application after learning that the Knights planned to object and noted that YC chose to sue only the Knights even though there are multiple other registered water users on Jacobsen Ditch.  They included a transcript of a voicemail that Yelin allegedly left the Knights, admonishing them for objecting and threatening to become the water commissioner.  Plaintiffs claimed that Roaring Lion was not diverting water in August 2023 and, therefore, it was not required to install measuring devices at its headgate.  In support of element (2), Plaintiffs alleged that YC willfully and improperly failed to serve them in the underlying action.  They claimed that their contact information readily could be obtained from the Montana Secretary of State's website and, in Roaring Lion's case, from the main entrance gate to its properties.  Although the District Court concluded that the underlying action involved clear "disputes [between the parties] regarding . . . water usage," the question is not whether the underlying action lacked merit but whether YC used the action "as an instrument of coercion, rather than a legitimate means to resolve a genuine dispute." *Seltzer*, ¶ 58.

¶26     To succeed on a claim for malicious prosecution, a plaintiff must prove the following elements: "(1) a judicial proceeding was commenced and prosecuted against the plaintiff; (2) the defendant was responsible for instigating, prosecuting, or continuing such

12

proceeding; (3) there was a lack of probable cause for the defendant's acts; (4) the defendant was actuated by malice; (5) the judicial proceeding terminated favorably for the plaintiff; and (6) the plaintiff suffered damage." *Hughes v. Lynch*, 2007 MT 177, ¶ 12, 338 Mont. 214, 164 P.3d 913 (citations omitted).

¶27 In support of elements (1) and (2), Plaintiffs' complaint alleged that YC commenced and prosecuted the underlying action against them. Plaintiffs alleged that (3) YC lacked probable cause for filing the underlying action because twice in August 2023, YC, through its agents, hiked along Sawtooth Creek, trespassed on Plaintiffs' land, and shut down the Knights' headgate and removed Sawtooth Ranch's diversion infrastructure without notice. They claimed that YC misrepresented that Roaring Lion Ranch was unlawfully diverting from the Morgan Ditch because its only place of diversion is on the south side of Sawtooth Creek. Plaintiffs provided that the location of Roaring Lion's headgate, ditch, and irrigable place of use is publicly available information and that it closed its headgate prior to August 2023. Plaintiffs alleged that (4) the underlying action was actuated by malice, incorporating the same allegations as their abuse of process claim. Finally, Plaintiffs contended that (5) the underlying action ended in their favor because the court ultimately dissolved the TRO and dismissed the case and that (6) the allegedly wrongful TRO caused the Knights to lose a crop of hay, Sawtooth Ranch to lose revenues from cattle leases, and all Plaintiffs to incur legal fees.

¶28 Plaintiffs presented factual allegations in support of each element of their claims, giving rise to more than a mere suspicion that they are entitled to relief. *Jones*, ¶ 42. The

complaint was sufficient to notify YC of the facts that Plaintiffs intended to prove, the elements of their claims, and the relief they sought. *Kunst*, ¶ 35. Taking the above facts as true and viewing them in the light most favorable to Plaintiffs, we cannot conclude beyond doubt that Plaintiffs could prove no set of facts in support of their claims. *McKinnon*, ¶ 12. We therefore hold that Plaintiffs satisfied their pleading obligations under Rule 8(a) and that their complaint was sufficient to withstand dismissal.

## CONCLUSION

¶29 The District Court abused its discretion when it *sua sponte* converted YC's motion to dismiss into a motion for summary judgment and dismissed Plaintiffs' claims with prejudice. Under our liberal notice pleading rules, we conclude that Plaintiffs' complaint is sufficient to withstand a Rule 12(b)(6) motion to dismiss. Accordingly, we reverse the District Court's grant of summary judgment in YC's favor and remand for further proceedings.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY

14